JAMES W. McCARTHY ET AL., RESPONDENTS, v. ADOLPH
WALTER ET AL., APPELLANTS.

JAMES W. McCARTHY ET AL., RESPONDENTS, v. THEO-
DORE A. KLEFFMAN ET AL., APPELLANTS.

Submitted February 13, 1931—Decided October 19, 1931.

For the appellants, *J. Emil Walscheid.*

For the respondents, *J. Raymond Tiffany.*

The opinion of the court was delivered by

CAMPBELL, J. These are appeals from judgments of ouster in two proceedings in *quo warranto,* instituted and prosecuted under section 4 of the *Quo Warranto* act. *Pamph. L.* 1903, *p.* 377; 3 *Comp. Stat., p.* 4212.

The grounds of appeal may be grouped under five heads or points; the first, second and third applying to both judgments, and the fourth and fifth to that which is known as the Boulevard case, only.

These grounds will be taken up in order.

I. The judgments under review cannot be sustained because the proceedings upon which they are based are under section 4 of the *Quo Warranto* act.

To sustain this point appellants urge several reasons: (a) The existence of the offices of the incumbents, respondents below, cannot be inquired into; that right residing *exclusively* in the attorney-general in his official, public, capacity.

(b) To succeed, the relators must claim the identical offices held by the alleged usurpers, which is not the situation here because in the Park case the offices of the respondents below were abolished by *Pamph. L.* 1930, *ch.* 260, and, in the Boulevard case, they were abolished by *Pamph. L.* 1930, *ch.* 261, and further, that relators below contend their right to hold exists under *Pamph. L.* 1930, *ch.* 262.

(c) There must be identity of office in that claimed by the relator and respondent in proceedings under section 4 of the *Quo Warranto* act, and such identity does not exist in these cases.

(d) By the guise of urging that *Pamph. L.* 1930, *ch.* 261, abolishes the offices of boulevard commissioners, the relators, are in fact seeking an adjudication that those offices no longer exist, and the judgment of ouster is to that effect and

further that five park commissioners, that being the number of relators, may not proceed against three boulevard commissioners, the respondents below.

The Supreme Court held that chapters 260 and 261 simply abolished "the offices of the incumbents," and "the offices in the commission remain." With this conclusion we are unable to agree. The unquestioned purpose of these two acts was to oust the respondents below from the offices then occupied by them. We need not consider whether this might properly and effectively have been accomplished in one manner or another. Both acts contain the plainest and most unmistakable language, permitting of but one construction, and that is that the respective offices are abolished and not merely the tenure by which respondents below were holding such offices. If this drags down and extinguishes the corporate entities no reason is thereby presented for according the legislation a construction which will do violence to the exact and explicit language employed. If the corporate entity of the park board was destroyed by chapter 260 a new entity was attempted to be immediately set up by chapter 262. In the boulevard matter the situation is different and will be treated of later.

The result is that the relators, in their attack upon the park commissioners holding office on the passage of chapter 260, were not properly proceeding, nor could they under section 4 of the *Quo Warranto* act because they were not contesting simply the right of the defendants to lawfully occupy the offices the latter claimed, but were, in fact, and of necessity, attacking the office itself and actually asserting that it did not exist.

Further, there is no identity between the two offices except as to the duties and powers concerning the control and management of county parks. The park commission, represented by the defendants, was made up of four commissioners, no more than two of whom could be of the same political party; their terms were four years and they received their appointments at the hands of the Court of Common Pleas of Hudson county.

The relators are five in number, no more than three of whom shall be of the same political party, their terms are five years and they receive their appointments from the governor.

In the boulevard matter the situation also exists that by chapter 261 the offices of commissioners held by the defendants were abolished; the relators were not created and constituted a boulevard commission; the office, if any they had, was that of park commissioners. Whatever they took came to them as park commissioners by their appointment under chapter 262 and as such, chapter 261 attempted, by abolishing the offices of boulevard commissioners held by the defendants, to endow the relators with the powers and duties of the defendants.

We find that the procedure under section 4 of the *Quo Warranto* act was not proper and the judgments of ouster cannot be maintained. *Steelman* v. *Vickers*, 51 *N. J. L.* 180; *Davis* v. *Davis*, 57 *Id.* 80; *Richman* v. *Adams*, 59 *Id.* 289; *Holloway* v. *Dickinson*, 69 *Id.* 72; *Manahan* v. *Watts*, 64 *Id.* 465; *Moore* v. *Seymour*, 69 *Id.* 606; *Dunham* v. *Bright*, 85 *Id.* 391, 394; *Morris* v. *Fagan*, 85 *Id.* 617; *Florey* v. *Lanning*, 90 *Id.* 12.

II. That in proceeding under section 4 of the *Quo Warranto* act the relators must establish legal title in themselves and cannot succeed through the weakness, or lack, of title in the respondents.

This is so and fully set at rest by Davis *v.* Davis; Manahan *v.* Watts; Dunham *v.* Bright and Florey *v.* Lanning, all before referred to.

III. The Park act of 1902, page 811 (3 *Comp. Stat., p.* 4161), is unconstitutional because it is therein provided that it shall not be submitted to the voters of any county for acceptance or rejection unless, and until, the board of chosen freeholders of such county have by resolution so determined and provided. This was pleaded for the purpose of establishing that if the act is unconstitutional, then so also are *Pamph. L.* 1930, *ch.* 260, 262, and the relators took nothing by them; that at best they were but *de facto* officers; that

the respondents below, holding by the act of 1902, were also de facto officers, thus leaving the relators unable to succeed because of their inability to show a better title to the offices than the defendants had.

All the cases construing and passing upon statutes of this character are cited, classified and reviewed in *Attorney-General* v. *McGuinness*, 78 *N. J. L.* 346, by Mr. Justice Garrison, who wrote the opinion for this court. He classified them as "referendum" and "legislative" acts and points out *Paterson* v. *Society*, 24 *Id.* 385, decided in the Supreme Court in 1854, as the case wherein Chief Justice Green in his opinion firmly established the principles upon which statutes of this character are to find support as enactments within the constitutional exercise of the legislative prerogative.

The cases following *Paterson* v. *Society, supra,* are *Sandford* v. *Morris,* 36 *N. J. L.* 72; *Paul* v. *Gloucester,* 50 *Id.* 585; *Warner* v. *Hoagland,* 51 *Id.* 62; *In re Cleveland,* 51 *Id.* 319; *S. C.,* 52 *Id.* 188; *Noonan* v. *Hudson,* 51 *Id.* 454; *S. C.,* 52 *Id.* 398; *Kennedy* v. *Belmar,* 61 *Id.* 20, and *Allison* v. *Corker,* 66 *Id.* 182; *S. C.,* 67 *Id.* 596. *Attorney-General* v. *McGuinness, supra,* was decided in this court seven years after *Allison* v. *Corker,* last above cited.

Appellants base their contention of unconstitutionality of the Park act of 1902 upon the findings and conclusions of the distinguished jurist who delivered for this court the opinion in *Attorney-General* v. *McGuinness, supra.* In referring to the case of *DeHart* v. *Atlantic City,* 62 *N. J. L.* 586, wherein the Supreme Court had sustained an act that provided that it should become operative in all cities of a designated class when adopted by the common council he said: "This Supreme Court decision, however, runs counter to the fundamental doctrine of Paterson *v.* Society, which may be summarized to be that the legislative will may be imposed as law upon municipalities but *if any other will* is to intervene between the legislature and such municipalities, *it must be the will of the people* who are to be governed by such law and *not an alien will* even though it be *that of the governing body* for the time being of a municipality."

"That this is the logical result of the doctrine that we have adopted has been sufficiently pointed out, and it must be equally clear that such doctrine is effectually subverted if some *other will* than that either of the *legislature* or of the *people* can be called in to eke out the constitutional enactment of a law. Paterson *v.* The Society, called for the application of this doctrine only to the extent that a municipal charter enacted to take effect upon its acceptance by the electors of the municipality was a constitutionally enacted law; the case now before us calls for the application of the same doctrine to the extent that a supplemental municipal charter enacted to take effect on its adoption by the lawmaking body of the municipality is not a constitutionally enacted law."

The contention of appellants is that by section 17 of the Park act of 1902, that act cannot become operative through acceptance by the legal voters of a county unless or until and, in fact cannot be submitted at all, unless the board of chosen freeholders, in the exercise of their judgment and discretion, shall resolve to submit the question.

It seems to us to be perfectly clear that this is so. We are unable to find in the language of the section anything of a mandatory character.

The basic and fundamental principles established by *Paterson* v. *Society* and *Attorney-General* v. *McGuinness, supra,* support the contention of the appellants. A critical reading of the decision of this court in the latter case leads irresistibly to the conclusion that a statute in the nature of a supplemental charter, which cannot take effect unless through the exercise of a discretion or of a will intervening between the legislature and the voter, is not a constitutionally enacted law.

Superficially examined, the cases previously cited may seem to be in conflict with this conception of the court's reasoning in Attorney-General *v.* McGuinness. That conflict, however, apparent and not real, disappears when the cases are carefully considered. Among these is *In re Cleveland,* 52 *N. J. L.* 188 (at *p.* 198), where Mr. Justice Van Syckle, writing the opin-

ion for this court, said: "The fact that it is left by the statute to the discretion of the board of aldermen, or to the common council, or to the mayor of the city, to provide for an election, cannot affect the character of the legislation. That duty must be committed to some tribunal and so long as the like opportunity is given to all cities the legislation is *general and not special.*" It must be obvious that the learned justice who spoke for this court had before him for disposal a question wholly different from the point decided by this court in Attorney-General *v.* McGuinness. The alleged special character of the legislation in question was stressed and the point at issue in the case *sub judice* was not raised nor was it decided in the Cleveland case.

In *Paul* v. *Gloucester County, supra,* this court was called upon to decide whether the legislature had the right to delegate powers of local government to political subdivisions of the state.

The precise question presented for decision here was not involved in the questions presented to Mr. Justice Van Syckle in *In re Cleveland, supra.* Indeed, the statute, which was there being put to the test, lodged in the voters the power to initiate the election; ·for it provided that upon petition signed by one-tenth of the legal voters in any county as determined by the votes cast at the last previous election for members of the general assembly, the Circuit Court judge should within a certain time proceed to hear any objection as to the status of the voters, and finding none, he was directed to order an election to be held at which the question whether alcoholic liquors might be sold should be determined. No will, free to decide for itself whether the statute should be submitted for acceptance, could intervene between the legislature and the voter.

In Noonan *v.* Hudson County, the court sustained the statute as a constitutional enactment upon the theory that, being a "Road Act," the procedure laid down followed a practice which was in vogue at the time of the framing of the constitution itself. As the learned chancellor, speaking for this court (52 *N. J. L.* 400), said: "The law itself is a com-

plete and efficient piece of machinery, replete with all powers
necessary to its effective operation * * * the impractica-
bility of the creation of laws, by the law-making power, to
meet all phases of action, however trifling, numerous and
local, has necessitated not only the delegation of police powers
to municipalities, but also the framing of general laws, which,
so far as they apply to individual cases, are to be called into
action by another wisdom than that of a law maker. In other
words, the law-making power approves the general scheme of
the law and creates a tribunal to determine the wisdom of its
application to the several cases which come within its pur-
view. Of this character are * * * the determination of
the necessity for public and private roads upon freeholders
and surveyors of the highways * * *. The necessity
for this limited delegation of legislative power must be its
only excuse and probably was the origin of the assumption
of the right to make it. However this may be, when the
constitution itself was framed the practice of making such
delegation in the case of highways prevailed and it was not
condemned by that instrument."

Our consideration of the Park act of 1902, the asserted
constitutional defect in which was not raised or decided in
the Noonan case, forces upon us the conclusion that its de-
sign and effect are different from other referendum statutes
requiring the submission of a proposed improvement to the
voters, such as under the Walsh act (*Pamph. L.* 1911, *p.* 462;
as amended, *Pamph. L.* 1913, *p.* 323, § 17) ; the Municipali-
ties act (*Pamph. L.* 1917, *p.* 319—at *p.* 461, § 24) ; and
*Comp. Stat., p.* 4142, ¶ 5; *Comp. Stat., p.* 521; *Comp.
Stat., p.* 516, § 2; *Comp. Stat., p.* 519, § 1.

In all of these statutes the power to initiate is definitely
reposed and vested in the governing body, but the power
to execute and perform is either contingent upon approval
of the voters or may be arrested until such approval is
obtained.

In our view such statutes present a radically and funda-
mentally different question from that resulting from statutes
which are not to have any effect at all; from which no powers

are derived, and under which no duties can arise unless the statutes are accepted as the law of the place by the voters. Hence, in our judgment Noonan *v.* Hudson County is not in conflict with the construction placed by us upon the decision in Attorney-General *v.* McGuinness.

In Allison *v.* Corker, the statute under review had to do with the creation of a "public road board" selected by the freeholders of a road district established by the township committee of any township, under an act calling for the acceptance of its terms after the establishment of the district. As this court said in Noonan *v.* Hudson County, the practice of making such delegation in the case of highways prevailed at the time of the framing of the constitution and in general acceptance, it then was and since has been regarded as a legitimate exercise of the functions of the legislature.

It is unnecessary for us to devote any time to the consideration of *Sandford* v. *Morris,* 36 *N. J. L.* 72 ; *Warner* v. *Hoagland,* 51 *Id.* 63, or *Kennedy* v. *Belmar,* 61 *Id.* 20, for if any conflict exists, which we do not decide, those cases were overruled by *Attorney-General* v. *McGuinness, supra.*

Concluding as we do that section 17 of the Park act of 1902 is so phrased as to prevent the acceptance of the provisions of the statute by the legal voters of a county unless the board of chosen freeholders in the exercise of their judgment and discretion resolve to submit the question, leads to a determination that the act is unconstitutional.

IV. The Boulevard act (*Pamph. L.* 1888, *p.* 397 ; 4 *Comp. Stat., p.* 4503) is unconstitutional because the provision for submission to the voters is dependent upon action by the board of chosen freeholders.

This question has already been definitely disposed of to the contrary by *Noonan* v. *Hudson,* 51 *N. J. L.* 454; *S. C.,* 52 *Id.* 398.

V. The last ground of appeal is that *Pamph. L.* 1930, *ch.* 261, is unconstitutional, because:

1. It is special and local and regulates the internal affairs of Hudson county only.

2. That it treats of more than one subject and these subjects or objects are not expressed in its title.

3. That it incorporates the provisions of other acts without setting them out in its context.

To the second and third grounds we need say nothing more than that we approve of, and adopt, the ruling of the court below against them.

As to the first ground, we disagree with the court below and conclude that the acts do transgress the provisions of the organic law in the particulars assigned.

As far back as 1880 Chief Justice Beasley, in *Richards* v. *Hammer,* 42 *N. J. L.* 435, held that the act there under consideration "was intended to apply and that it does and must ever apply to these two cities alone, and that the legal effect of this law, as now constituted, is the same as though it had, in express terms, declared that it was not to be operative throughout the state at large, but in the cities of Elizabeth and Newark only. Can a law thus designed and framed stand the constitutional test?"

His answer to the query was in the negative.

In his opinion the Chief Justice refers to the case of *Van Riper* v. *Parsons,* 40 *N. J. L.* 125, with respect to which and upon the same point Mr. Justice Van Syckle, in *Tiger* v. *Morris Common Pleas,* 42 *Id.* 631, quoted the latter case as follows: "The object of the constitutional regulation is manifest. It was to exterminate, root and branch, special and local legislation, and to substitute general law in the place of it in every instance in which such substitution could be effected * * *," and then held: *"The courts should not be astute to suggest or to countenance nice distinctions, where the law is so plainly declared."*

We think these judicial pronouncements are as pertinent and effective to-day as they were over a half century ago; then within five years of the adoption of the constitutional amendments prohibiting local and special laws.

It is urged that this legislation of *Pamph. L.* 1930, *ch.* 260, 261 and 262, was enacted for the purpose of economy and to consolidate two county administrative bodies, namely, county park commissions and boulevard commissions.

If the legislation stands, one of the results is a consolidation of the two boards or commissions.

The primary result, if not the design, is fully exposed by a practical application of the statute. Chapters 260 and 262 (*Pamph. L.* 1930) take from the citizens and taxpayers of Hudson county the right which they obtained under the Park act of 1902, *supra,* to have their moneys expended and their public parks controlled by a bi-partisan board to be appointed by their local county court and place such expenditures and control in a politically dominated board to be appointed by the governor.

Chapter 261 (*Pamph. L.* 1930) takes from the citizens, voters and taxpayers of Hudson county the privilege which they obtained under the Boulevard act of 1888, *supra,* to have their moneys expended by, and the control of their boulevards to be in, a board of three commissioners, elected at large, no more than two of whom could be of the same political party, and in place thereof such legislation places such expenditures and control in this same park board just before referred to.

If, in fact, this is the purpose, as well as the effect, of legislation, it is destructive of the principles of local self-government and home rule, which, while not guaranteed and secured to the citizens of the state by the constitution, is eagerly sought after, demanded, and zealously defended, and when once obtained, all attempts to deny or withdraw are obnoxious and stubbornly resisted.

When a legislative enactment evidences a *bona fide* effort to legislate within constitutional authority, and not beyond or in conflict with the prohibitions of the organic law, "the judicial function with respect to the invalidation of a legislative act does not consist merely in comparing the determination evinced by such act with that reached by the court and the substitution of the latter for the former whenever they happen to differ. On the contrary, the ultimate judicial question is not whether the court construes the constitution as permitting the act, but whether the constitution permits the court to disregard the act; a question that is not to be

conclusively tested by the court's judgment as to the constitutionality of the act, but by its conclusion as to what judgment was permissible to that department of the government to which the constitution has committed the duty of making such judgment." *Attorney-General* v. *McGuinness*, 78 *N. J. L.* 346, 373.

When, however, statutes of the character of those before us, framed for the purpose, with the design, and having the effect of evading, or being, by the merest technicality, an obedience to, and observance of constitutional requirements and mandates, come before the courts for their approval as constitutional enactments, the duty of the courts is that "they should not be astute to suggest or countenance nice distinctions * * *" in order to uphold and support such legislation but, on the contrary, should be given to close and exact applications and constructions that may by "niceties" of constitutional construction and application defeat the acts.

It is admitted that at the time of the adoption of the legislation in question it applied only to Hudson county because that county alone, out of all the counties of the state, had adopted and was working under the Park act of 1902, *supra,* and likewise was the only county that was then operating under the so-called Boulevard act of 1888, *supra,* and, in fact, was the only county that ever had operated thereunder.

But it is urged that *Pamph. L.* 1930, *ch.* 261, by its language can apply to any other county that may hereafter have a public park commission and which may undertake to lay out, &c., a boulevard, &c., under the act of 1888.

Under *Van Riper* v. *Parsons, Tiger* v. *Morris* and *Richards* v. *Hammer, supra,* as before suggested, we are not required to "be astute to suggest or to countenance nice distinctions" to save this legislation. However, giving the statute the presumption of constitutionality, we find that it does not meet the standard and survive the test. If we take the finding of the court below that this legislation simply terminates the terms of office of present incumbents, as boulevard commissioners, it is immediately apparent that it applies both pres-

ently and in the future to the offices of the present incumbents in Hudson county and does not in language, nor could it, logically, apply to incumbents in any county that might in the future undertake to operate under the act.

If we adopt the only other construction that can be put upon this act, that it abolishes the office itself, the result is not different.

The original act of 1888, *supra,* placed the control, management, &c., of such roads and boulevards and extensions, initially, in the board of chosen freeholders of the county. By the supplement of 1898, *supra,* boulevard commissioners were provided for, to be selected by popular vote, and all the duties, &c., by the original act placed in the board of chosen freeholders were placed in such commissioners *when elected.*

Now it seems to be perfectly apparent that if *Pamph. L.* 1930, *ch.* 261, abolishes the offices themselves, of necessity, it applies to presently existing offices, which exist in Hudson county only, and in any county that shall in the future undertake to work under the original act the duties and powers will be and remain, as in that act provided, namely, in the board of chosen freeholders. A careful examination of the original act of 1888 will disclose that its original purpose was to place in the board of chosen freeholders of the county not only the power to open, construct, &c., such roads or boulevards but also the power and duty to maintain and regulate them after completion.

Not until 1898 was this changed and then the supplement to the original act adopted in that year (*Pamph. L.* 1898, *p.* 173) by section 2, provided that the duties and powers which by the original act "devolve on any board of chosen freeholders * * * shall hereafter devolve exclusively upon such commissioners when elected * * *." Section 3 of the supplement provides that where any road "constructed or to be constructed," under the original act, is completed by the time of the next general election succeeding the date of passage of this supplement, then the commissioners shall be elected *at* such election otherwise they shall be elected at the general election next succeeding such *completion,* "and

*until the first election and qualification of such commissioners, the board of chosen freeholders in such county or counties shall control, maintain and repair, such roads as heretofore."*

Now we have already held that *Pamph. L.* 1930, *ch.* 261, if it does anything, abolishes the offices of boulevard commissioners, created by the supplement of 1898, *infra,* so that such office no longer exists, either in Hudson county or any other county in the state that may in the future undertake to operate under the original act. Therefore, if chapter 261 is to stand, boulevard commissioners can never again, or anywhere, be elected. In no other county than Hudson, therefore, can the duty of maintenance and control over the roads constructed under the act pass to boulevard commissioners, but, hereafter, in all other counties such power and duty must remain where the original act placed it; in the board of chosen freeholders.

This being so, the result is obvious, and that is the attempt by section 2 of chapter 261 (*Pamph. L.* 1930), to transfer the duties of boulevard commissioners to park commissioners not only presently affects Hudson county alone but never can, under the state of the statute before pointed out, apply to any other county. This condemns the statute in question as local and special regulating the internal affairs of Hudson county only.

For this reason, also, we conclude that the judgment of ouster in the boulevard proceeding must be reversed.

The result is that for the reasons assigned both judgments under review must be reversed.

*For affirmance*—PARKER, CASE, WELLS, JJ. 3.

*For reversal*—CAMPBELL, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, JJ. 7.