[No. 10839.    Department Two.    September 19, 1913.]

MICHAEL J. SMITH et al., Respondents, v. JAMES WEED et al.,
Appellants, WEED INVESTMENT COMPANY, Garnishee
Appellant.[1]

EXECUTION—SUPPLEMENTARY PROCEEDINGS—THIRD PARTY CLAIMS—
TITLE TO PROPERTY IN DISPUTE—WIFE OF JUDGMENT DEBTOR.   Rem. &
Bal. Code, § 620, providing that, in supplementary proceedings, the
court may order delivered to the sheriff or a receiver personal prop-
erty in the possession or control of the judgment debtor, only when
his right to the possession thereof is not "substantially disputed,"
has reference to property claimed by third persons not parties to
the suit as to whom a trial of the title would be without due process;
hence the requirement that there be no substantial dispute as to the
right of possession does not, where the wife was a party to the ac-
tion, prevent the court from determining the ownership of property
claimed by the wife as her separate estate, on supplementary pro-
ceedings in aid of an execution against the separate property of
the husband and the community property of the husband and wife.

SAME—RECEIVER—REAL PROPERTY.   In supplementary proceedings
the court may appoint a receiver of the real as well as the personal
property, under Rem. & Bal. Code, § 640, providing that the court
may appoint a receiver of "the property" of the judgment debtor;
especially in view of Id., § 644, providing that real property is vested
in the receiver from the time when the order is filed with the county
auditor.

HUSBAND AND WIFE — SEPARATE PROPERTY OF WIFE — COMMUNITY
PROPERTY—STOCK ISSUED IN RETURN FOR PROPERTY.   Where a holding
corporation was organized by a family and the property of the mem-
bers of the family turned over to the company in return for pro-
portionate parts of the capital stock, whether stock issued to a wife
was community or separate property depends upon the nature of
the property which she gave in consideration for the stock; and the
stock issued in return for property acquired by her by gift is her
separate property, and in return for her community property, is
community property.

EXECUTION—SUPPLEMENTARY PROCEEDINGS—RECEIVERS—CLAIMS BY
THIRD PERSONS.   On supplementary proceedings, the title to shares
of stock held and claimed by third persons, who were not parties to
the action, cannot be litigated, and where doubt appears as to the

[1]Reported in 134 Pac. 1070.

*bona fides* of transfers to them from the judgment debtors, the court may authorize the receiver to institute suits to determine the same.

HUSBAND AND WIFE—CONVEYANCES BETWEEN — COMMUNITY PROPERTY—GIFT TO WIFE. Community property deeded by a husband to his wife when he was not expected to live long, with the express purpose of making provision for the wife by giving it to her as her separate estate, thereupon becomes her separate property; and it is immaterial that the parties continued to live on the property.

FRAUDULENT CONVEYANCES—TRANSACTION BETWEEN HUSBAND AND WIFE—GOOD FAITH—BURDEN OF PROOF—SUBSEQUENT CREDITORS. Rem. & Bal. Code, § 5292, casting the burden of proving the good faith of transactions between husband and wife upon the party asserting the good faith, does not authorize a subsequent creditor to raise the question of good faith; especially in view of Id., § 8766, providing that a deed from husband to wife shall divest the property from every claim or demand as separate property, except as to "any existing equity in favor of creditors of the grantor at the time of such transfer."

SAME. The husband's transfer of community property to his wife as a gift is not fraudulent as to creditors, where it was established that the deed was executed and delivered before the liability arose, although the deed was not recorded until ten days after the husband incurred the liability.

SAME—EVIDENCE OF FRAUD—SUFFICIENCY. The fact that a deed making a gift from a husband to his wife was not recorded until ten days after a liability incurred by the husband, and that the year of the acknowledgment was blotted and obscure, is not sufficient to establish fraud as to creditors, where there was positive evidence that it was executed and delivered on the day of its date, three years before, and the notary taking the certificate of acknowledgment identified the deed as one acknowledged before him at some time before liability arose.

EXECUTION — SUPPLEMENTARY PROCEEDINGS — RECEIVERS—FRAUDULENT CONVEYANCES. In supplementary proceedings, the receiver is properly authorized to institute suits to set aside a transfer of the debtor's school land lease, made to his son shortly after incurring the liability, and by his son transferred to other parties, where the debtors remained in possession exercising acts of apparent ownership.

SAME—APPOINTMENT OF RECEIVER. Rem. & Bal. Code, § 640, vests broad discretion in the trial court to appoint a receiver in supplementary proceedings, and the appointment is justified where one of the parties claiming adversely was a nonresident, and the matters

could be litigated by the receiver in a smaller number of actions than otherwise.

SAME—RECEIVERS—COSTS AND EXPENSES. In supplementary proceedings, it is error, in appointing a receiver of the property, to authorize the payment of his compensation and expenses in instituting proposed suits out of the property of the judgment debtor, and the order should require the costs of such actions and expenses to abide the result of the actions, and in case of failure, to be taxed against the creditors.

SAME—INJUNCTION. In supplementary proceedings, by the express provision of Rem. & Bal. Code, § 624, the court may by injunction restrain all persons having notice from conveying or interfering with the property involved.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered June 21, 1912, appointing a receiver in proceedings supplementary to execution, after a hearing before the court, in consolidated actions for damages from fire. Modified.

*Murphy & Wall* (*Robert G. Cauthorn*, of counsel), for appellants.

*C. E. Stevens* and *T. W. Hammond*, for respondents.

ELLIS, J.—Two actions were brought, one by the Electric Logging Company, another by Michael J. Smith and wife, and Christian Schultz and wife, against James Weed and Susan Weed, to recover damages for the burning of property of the respective plaintiffs by fires, set out by James Weed on land of which he was in control, and negligently allowed to spread. The two actions, being based on the same facts, were consolidated. Each of the two sets of plaintiffs recovered judgment satisfiable out of the separate property of James Weed and the property of the marital community consisting of James Weed and Susan Weed, but not out of the separate property of the defendant Susan Weed. The plaintiffs then instituted proceedings supplemental to execution against the defendants, and also garnishment proceedings against the Weed Investment Company, a corporation, as garnishee de-

fendant. Upon the hearing, the court appointed a receiver for the defendants.

The evidence showed that, for some time prior to the fire, which took place on September 14th, 1910, and at the time of the commencement of the original actions, the defendants were the owners in community estate of a lease covering 80 acres of school land, situated in Pierce county; that, on October 10, 1910, the lease was assigned to Clarence A. Weed, a son of the defendants, and that Clarence A. Weed thereafter transferred the lease to the Weed Investment Company, on March 2d, 1911, which subsequently, but prior to the hearing on supplementary proceedings, transferred the lease to one A. G. Keene; and that, ever since these transfers, Weed and wife and their family have held possession of the property and have been cutting and removing timber therefrom, as it is claimed, under an agreement with Keene.

The evidence further showed that, at the commencement of the actions, there was standing in the name of James Weed one share of the capital stock of the Weed Investment Company, and in the name of the defendant Susan Weed, 129 shares of the capital stock of that company, and that, on the day following the court's verbal announcement of his decision in the consolidated cases, Mrs. Weed caused to be transferred on the books of the corporation 10 shares of stock to the attorney for the defendants, 40 shares to Helen M. Weed, a sister-in-law of the defendants, and 62 shares to the children of the defendants, leaving standing in her own name 17 shares of stock; and that the defendant James Weed has, at all times since the organization of the corporation, had the active management and control of its affairs.

It is admitted that the Weed Investment Company was organized as a holding company for the Weed family in February, 1907, with a capital stock of $20,000, divided into 200 shares, of a par value of $100 each; that this stock was fully paid up by deeding to the corporation certain property belonging to some of the children, which is not material to this

inquiry, and also property described as follows: The S. ½ of the S. ½ of the N. E. ¼ of the N. E. ¼ of Sec. 8, Twp. 23, N., R. 5 E., W. M., containing 10 acres; Tract 19, of Rainier Beach Garden Tracts; and lot 11, of block 40, Rainier Beach addition to Seattle.

The evidence further showed that, on about September 22d, 1910, the defendants caused to be recorded, in the auditor's office of King county, a deed from James Weed to his wife, Susan Weed, covering lots 22 to 30, inclusive, of block 55, Rainier Beach addition, and lots 5 to 8, inclusive, of block 6, Northern Pacific addition to Seattle. This deed, which is in evidence, bears date February 7, 1907, and purports to have been acknowledged on the same day but, by reason of certain ink blots covering the year, it is impossible to determine from the deed the date of the acknowledgment, though it purports to have been made on February 7th of some year. Both of the defendants testified that this deed was delivered to the defendant Susan Weed on February 7th, 1907, and that it remained in her possession until it was filed for record. There was a small house on one of the lots in block 55, plat of Rainier Beach, which is actually occupied by the defendants as their home; and on others of these nine lots, is situated a large house which the defendants lease to other persons. Lots 5 to 8, in block 6, Northern Pacific addition, are located in West Seattle, several miles from the other lots.

Upon this evidence, the court found that the several transfers of the school land lease were made for the purpose of placing the property beyond the reach of execution upon the plaintiffs' judgments, and that the leasehold interest still remains community property of the defendants; that the transfer by Susan Weed of ten shares of the capital stock of the Weed Investment Company to the attorney, and of forty shares to the sister-in-law, Helen M. Weed, was made for the purpose of defrauding their creditors, and especially the plaintiffs, and for the purpose of placing this stock beyond

the reach of the plaintiffs in this action; and that these shares
of stock, together with the 17 shares still held by Susan Weed,
and one share held by the defendant James Weed, are com-
munity property of the defendants, and of an actual value of
$6,800. The court also found that the transfer from the de-
fendant James Weed to Susan Weed, of the nine lots in
block 55, plat of Rainier Beach, and the four lots in block
6, Northern Pacific addition to Seattle, was made as a matter
of convenience for the benefit of the entire family, including
the husband, and not for the purpose of vesting title in the
defendant Susan Weed as her separate property, and that
all of these lots are owned by the defendants in community
estate.

Upon its findings, the court made conclusions of law ap-
propriate to an order appointing a receiver, which was en-
tered June 21, 1912, without notice. The order was, in sub-
stance, that the receiver take charge of the property of the
defendants and dispose of so much as necessary to satisfy
the judgments of the plaintiffs, with expenses of the pro-
ceedings and the receivership; that the receiver is authorized
to institute such suits as may be necessary after the applica-
tion of the proceeds of property coming to his hands by con-
veyance from the defendants to the satisfaction of the judg-
ments, for the purpose of setting aside the transfers of the
leasehold interest in the school lands and the transfers of
stock of the Weed Investment Company to defendants' at-
torney and to Helen M. Weed; that the defendants be and
are ordered to forthwith assign to the receiver his or their
interest in the 68 shares of the capital stock of the Weed In-
vestment Company, and convey to the receiver the Seattle
lots, failing which the interest of the defendants in the
lots and stock shall be deemed vested by the order in the re-
ceiver; that the receiver set apart, as the homestead of the
defendants, such portion of the nine lots in block 55, plat
of Rainier Beach, with the dwelling house in which the de-
fendants reside, which shall not exceed a value of $2,000.

The order further enjoined the defendants, and all persons having notice of the supplementary proceedings or garnishment, from in any manner making or suffering any transfer, conveyance, or disposition of, or interfering with, the property of the defendants, or the stock, property, or holdings of the Weed Investment Company, pending the further order and direction of the court; and that the order should become effective upon the receiver filing bond in the sum of $6,000, to be approved by the court. From the order appointing the receiver, the defendants appeal.

The appellants' contentions may be reduced to these: (1) That the title to property claimed by the wife as her separate property could not be litigated or determined in proceedings supplementary, and that, in any event, such proceedings have no application to real property. (2) That the evidence did not, in any event, justify the finding that the 17 shares of stock in her name were community property. (3) That the evidence did not justify the order authorizing the receiver to sue to set aside the transfers of 40 shares of stock to Helen M. Weed and the 10 shares to appellants' attorney. (4) That there was no evidence to support the finding that the 13 Seattle lots were community property. (5) That the court erred in authorizing the receiver to institute suit to set aside the transfers of the school land lease. (6) That no necessity was shown justifying the appointment of a receiver. (7) That the court, in any event, erred in ordering the expenses of suits to be paid out of the property ordered to be turned over to the receiver. (8) That the injunctive part of the order was erroneous.

I.  It is contended that the title to the 17 shares of stock, and of the 13 Seattle lots standing in the name of the appellant Susan Weed, could not be litigated or determined in proceedings supplementary, because she asserted ownership of these properties as her separate estate, and that the order to turn these properties over to the receiver was, there-

fore, void. The argument is based upon Rem. & Bal. Code, § 620 (P. C. 81 § 971), which reads:

"Where it appears from the examination or testimony taken in the special proceedings authorized by this chapter that the judgment debtor has in his possession or under his control money or other personal property belonging to him, or that one or more articles of personal property capable of manual delivery, his right to the possession whereof is not substantially disputed, are in the possession or under the control of another person, the judge by whom the order or warrant was granted, or to whom it is returnable, may in his discretion, and upon such notice given to such persons as he deems just, or without notice, make an order directing the judgment debtor, or other person, immediately to pay the money or deliver the articles of personal property to a sheriff designated in the order, unless a receiver has been appointed or a receivership has been extended to the special proceedings, and in that case to the receiver."

It is true, as argued by the appellants, in the words of the statute, that the order can only be made to turn over property in possession or under control of another person as property of the debtor "his right to the possession whereof is not substantially disputed." But unless we ignore the plain intent of the statute, and lose sight of its purpose as in aid of execution, this provision must be confined to third persons not parties to the original action, and against whom a trial of ownership in the summary proceedings would be without due process. It is furthermore true that the wife in this case claimed to own the property as her separate estate, and claimed that it could not be subjected to the judgments against the husband and the community. But she was a member of the community, was a party to the action, and had been brought in by original process. She was in the case for all purposes, and no inquiry pertinent to the purpose of the supplementary proceedings was as to her without due process any more than as to her husband.

The authorities cited by the appellants from other jurisdictions hardly bear out their contention. In *Lewis v. Cham-*

*berlain,* 108 Cal. 525, 41 Pac. 413, and *McDowell v. Bell,* 86 Cal. 615, 25 Pac. 128, the wives of the judgment debtors, whose title to the property which they claimed as their separate estate it was held could not be litigated in the supplementary proceedings, were not parties to the original suits. They were third parties to every intent and as to them the proceedings were summary and without due process of law. In the other cases cited, *Union Collection Co. v. Snell,* 5 Cal. App. 130, 89 Pac. 859, *Spaulding v. Coeur d'Alene R. & Nav. Co.,* 6 Idaho 638, 59 Pac. 426, and *First Nat. Bank v. Cook,* 12 Wyo. 492, 76 Pac. 674, 78 Pac. 1083, 2 L. R. A. (N. S.) 1012, the claimants were third parties, strangers to the suit, and no mere question of the character of ownership, whether separate or community, was involved.

On the other hand, in one case, though a doubt is there expressed as to the applicability of the statute to real property, this court in effect held that the question whether property was the property of the community or separate property of the wife could be litigated and determined in supplementary proceedings. *Field v. Greiner,* 11 Wash. 8, 39 Pac. 259. The doubt there expressed as to the application of the statute to real property is also asserted by the appellants here. A careful consideration of the various sections of the statute, however, now convinces us that the doubt is not well founded. Section 640 (P. C. 81 § 1011), provides that the court, in such proceedings, "may make an order appointing a receiver of the property of the judgment debtor." This would seem broad enough to include real property; but § 644 (P. C. 81 § 1019), leaves no room for cavil. After providing that the property of the judgment debtor vests in a qualified receiver from the time of the order, that section makes certain exceptions, the first of which is:

"Real property is vested in the receiver only from the time when the order, or a certified copy thereof, as the case may be, is filed with the auditor of the county where it is situated."

It seems plain that the order appealed from is not void, either because the court permitted the inquiry as to the title of the property, or because the order extended to real estate as well as to personal property.

II. With the stock which was issued to the children, or afterwards transferred to them, by Mrs. Weed, we are not concerned. Those transactions are not attacked. Were the other 68 shares of stock community property, or the wife's separate property? This cannot be determined by the mere fact that the stock was issued to the wife. It must depend upon the ownership of the property turned over to the corporation in payment for the stock. Property acquired by either spouse during the coverture is, of course, presumptively community property, but this presumption is not conclusive. It may be overcome by clear and convincing proof. The evidence is uncontradicted that the corporation was organized in 1907 as a holding company for the common interest of the family; that the various members of the family turned in their property with the understanding that each should receive a proportionate part of the stock, and that the 68 shares were paid for by the conveyance to the corporation of the 10 acres in section 8, tract 19, of Rainier Beach Garden Tracts, and lot 11, block 40, Rainier Beach addition. Both of the appellants testified that a 20-acre tract, including the 10 acres in section 8, was deeded to Mrs. Weed in 1903 by their son Clarence, a young man thirty years of age, as a gift, and there is no testimony to the contrary. That she held this property as a gift is in no sense inconsistent with the admitted fact that the corporation was for the common benefit of the members of the family, which seems to have influenced the trial court to hold that the stock issued for it was community property. Turning separate property over to the corporation in exchange for stock in the family corporation could not change the character of the title to property so exchanged from one of gift to one of purchase. It was still property acquired by gift, hence separate prop-

erty, and the stock taken for it was impressed with the same character and held in the same title. The corporation, though a family concern, must not be confused with the community, which was a separate entity. The court erred in ordering the 17 shares held by Mrs. Weed to be turned over to the receiver as community property.

As to the other property turned over in payment for this stock, lot 11, block 40, Rainier Beach addition, was admittedly either the separate property of the husband or property of the community. One share of stock was issued to the husband for it. There was no error in the order that this share be turned over to the receiver.

III. The ownership of tract 19, Rainier Beach Garden Tracts, is much less certain. The wife testified that, of the 20 acres deeded to her by her son Clarence in 1903, she afterwards exchanged the north half with Clarence for other property which she still later sold, and with a part of the proceeds, "helped buy tract 19." She does not claim to have paid the full purchase price from her own funds. The husband testified that $475 belonging to Helen M. Weed, a sister-in-law, was also invested in this tract in 1905. In whose name the property was held until the corporation was formed does not appear. It is undisputed that all of this tract was turned over to the corporation and stock issued therefor to the wife. No attention seems to have been paid to the alleged interest of Helen M. Weed till after the fire, after the trial, and after the court's oral announcement of his decision on April 17, 1911, in the original consolidated actions. On the next day, 40 shares of the stock were transferred to her and 10 shares to the appellants' attorney. These shares being held by third parties and claimed by them, their ownership could not be litigated in the supplementary proceedings. In view of the tardy and vague claim of ownership now made on behalf of Helen M. Weed, and her relationship to the appellants, and in view of the transfer to the attorney of ten shares for services, but after the judg-

ments of the appellants were certain to be entered, we can-
not say that the court erred in authorizing the receiver to
institute suits to determine the *bona fides* of these transfers.

IV.   The wife claimed the 13 Seattle lots under a deed
of gift from her husband which it is claimed was made on
February 7, 1907.   The respondents contend that this trans-
fer was void under Rem. & Bal. Code, § 5288 (P. C. 203 § 1),
as to subsequent creditors, because made in trust for the use
of the community.   The testimony of both the appellants and
some of the children was emphatic that this deed was made
and delivered at a time when the husband was not expected
to live long, and with the express purpose of making provi-
sion for the wife by giving her this property as her separate
estate.   There was no evidence to the contrary.   The con-
tinued occupancy of a part of the premises as a home for
the family could not change the character of the estate con-
veyed or convert the deed into a conveyance in trust.   By
statute, Rem. & Bal. Code, § 5292 (P. C. 95 § 3), the burden
of proving the good faith of transactions between husband
and wife rests upon the party asserting the good faith, but
this does not mean that a subsequent creditor can raise the
question of good faith.   By another statute, that matter, in
case of conveyance from one spouse to the other, is open to
question only by holders of existing equities.   Rem. & Bal.
Code, § 8766 (P. C. 95 § 47), declares that either spouse
may convey directly to the other all of his or her interest in
their community property,

"And every deed made from husband to wife . . .
shall operate to divest the real estate therein recited from any
and every claim or demand as community property, and shall
vest the same in the grantee as separate property: Provided,
however, that the conveyances or transfers hereby author-
ized shall not affect any existing equity in favor of creditors
of the grantor at the time of such transfer, gift, or convey-
ance . . ."

Plainer language could hardly be framed.   The things
urged as casting suspicion on this deed are the fact that the

year of the date of the acknowledgment is obscured by a
large ink blot and apparent attempted erasure, and the fact
that the deed was not recorded until September 24, 1910,
some ten days after the fire. That this deed was executed
on February 7 of some year was fairly established. The
notary before whom it was acknowledged testified that on
several occasions he had gone to the Weed residence to take
acknowledgments but that he could not remember the exact
date of any of them. He testified positively that both the
deed and the certificate of acknowledgment were in his own
handwriting, and when his attention was directed to the date
of the latter, February 7, he identified that also as his hand-
writing. He also testified that he had no memory of ever
acknowledging any deed some years after it was dated.
Whether this deed was executed February 7, 1907 or Feb-
ruary 7, 1910, or any other February 7, prior to the time it
was filed for record, was immaterial. February 7 of any
possible year would antedate the fire by several months. But
both of the appellants testified positively that the deed was
executed and delivered on February 7, 1907, and the notary
testified that he thought so. We think the evidence wholly in-
sufficient to warrant a finding that these thirteen lots were
community property.

V. We find no error in the order authorizing the re-
ceiver to institute suit to set aside the transfers of the school
land lease. They were all made after the fire, and the ap-
pellants are still in possession, exercising acts of apparent
ownership. The circumstances attending these transfers
bear sufficient marks of fraud to warrant the order.

VI. The appellants earnestly contend that no necessity
was shown sufficient to justify the appointment of a receiver.
The statute, Rem. & Bal. Code, § 640 (P. C. 81 § 1011),
vests the broadest discretion in the trial court. There were
two judgments to be satisfied, and one of the parties claim-
ing adversely was a nonresident. By the appointment of a
receiver, the matters could be litigated in a smaller number

of actions than otherwise. In view of the broad terms of the statute, we cannot say that, under the conditions here presented, the court erred in appointing the receiver.

VII. The order, if it is construed as authorizing the payment of the compensation and expenses of the receiver in such proposed suits out of the debtor's property which may come into his hands from other sources is, we think, inequitable and erroneous. It would be a manifest injustice to compel the debtor to pay the expenses attendant upon an unsuccessful attempt to establish that transfers of property made by him were fraudulent. No such advantage was ever intended to be given by the statute. The order should have required the costs of such actions and the expenses incurred therein to abide the result of such actions, and in the event of failure, to be taxed against the respondents. The statute was intended to give all reasonable aid to the uncovering of fraud, but not to shift the burdens of ordinary litigation.

VIII. We find no merit in the claim that the court had no power to include in its order an injunction restraining the appellants and all persons having notice of the supplementary proceedings from conveying or interfering with the property involved. The statute expressly grants that power. Rem. & Bal. Code, § 624 (P. C. 81 § 979).

The injunctive order is, however, admittedly erroneous in that it extends to all stock and all property and holdings of the Weed Investment Company. It should have been confined to the stock and property involved in the proceedings.

The cause is remanded, with direction that the order be modified to conform to the views herein expressed. The appellants may recover their costs.

CROW, C. J., FULLERTON, and MAIN, JJ., concur.