[No. 44126.   En Banc.   October 21, 1976.]

THE CITY OF EVERETT, ET AL, *Appellants,* v. FIRE FIGHTERS, LOCAL NO. 350 OF THE INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, ET AL, *Respondents.*

*Allen J. Hendricks, City Attorney,* for appellants.

*Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle* and *Jerome L. Rubin,* for respondent Fire Fighters Local No. 350, et al.

*Slade Gorton, Attorney General,* and *Gomer L. Cannon* and *Robert G. Swenson, Assistants,* for respondent State.

ROSELLINI, J.—The respondent City and the appellant union sought to negotiate an employment contract for the year 1976. Bargaining reached an impasse, and the dispute was submitted to mediation pursuant to RCW 41.56.100. Thereafter, a fact-finding panel was selected in accordance with RCW 41.56.440. The City having rejected the recommendations of the fact-finding panel, the union attempted to invoke the arbitration procedure provided for in RCW 41.56.450 *et seq.* The City refused to submit to arbitration and brought this declaratory judgment action, seeking to obtain a ruling that the arbitration provisions are unconstitutional. It also asked for a ruling that a minimum crew clause in the contract is not subject to negotiation.

The Superior Court held the act constitutional and refused to consider the contention that the minimum crew clause was not negotiable, finding that the matter was within the jurisdiction of the arbitrators, whose decision could be reviewed only as provided in RCW 41.56.450.

This court accepted the City's direct appeal, ordering it to proceed with arbitration pending the court's decision.

Some of the theories advanced by the City were also argued in the case of *Spokane v. Spokane Police Guild,* 87 Wn.2d 457, 553 P.2d 1316 (1976), which was heard on the .same day and considered in conjunction with this case.

Those theories which were disposed of in that opinion will not be discussed herein.

It is contended that the statute, insofar as it provides for compulsory arbitration of employment disputes between cities and their uniformed personnel, violates the home rule powers of the City, which are contained in Const. art. 11, § 10 (amendment 40). The City concedes that cities are subject to general laws of the state (citing *Martin v. Tollefson*, 24 Wn.2d 211, 163 P.2d 594 (1945)), and that RCW 41.56.450 *et seq.* is such a law. But it argues that the resolution of a dispute by an arbitration panel, inasmuch as it "fixes the salary and wages of municipal employees," itself constitutes a law and is necessarily a "special law." The City does not contest the legislature's power to set salaries of uniformed personnel. But it contends that it can only do so by a law which provides for the same salaries throughout the state.

■■　No authority is cited which holds that the resolution of a labor dispute by an arbitration panel constitutes a law or that a labor contract is a law. *Mosebar v. Moore*, 41 Wn.2d 216, 221, 248 P.2d 385 (1952), cited by both the City and the union, does not support the proposition. It was there held that a state law forbidding the firing of a municipal employee on the ground that he did not live within the city took precedence over local laws in conflict with it. We said in that case:

> By authorizing municipal charters, the constitution does not take from the legislature the right to determine what shall be the law of the state, both inside and outside of municipalities.

2 E. McQuillin, *Municipal Corporations* § 4.47 (3d rev. ed. F. Ellard 1966), also cited by the City, is addressed to the problems which arise when legislatures attempt to enact laws that pertain to only one city, in the face of constitutional prohibitions of special laws. The treatise in section 4.33 draws attention to the fact that "home rule" provisions such as that found in amendment 40 have taken the place of special laws with relation to municipal corporations.

There is nothing to be found in either of these sections which supports the proposition that the decisions of arbitration panels, provided for in general laws, amount to special laws and violate the right of home rule.

A New Jersey decision quoted in section 4.47 (*McCarthy v. Walter*, 108 N.J.L. 282, 156 A. 772 (1931)) defines a special law as one which is restricted to persons or places which do not comprise all the objects which naturally belong to the class. We have defined the term "special law" in much the same terms. *Young Men's Christian Ass'n v. Parish*, 89 Wash. 495, 154 P. 785 (1916). The persons naturally belonging to the class covered by an employment contract are the employees of the particular employer. The fact that persons employed by others to perform the same kind of duties are not subject to the arbitration decision does not make that decision a "special law," assuming that it can properly be termed a law for any purpose.

The only remaining authority cited, *Beaverton v. International Ass'n of Firefighters, Local 1660*, 20 Ore. App. 293, 531 P.2d 730 (1975), is not helpful to the City. The court there held that the fact that a city ordinance dealt with matters which were covered by a state statute governing labor relations (and providing for compulsory arbitration) did not render it totally invalid. Rather, the court decided, the ordinance should be upheld to the extent that it dealt with matters of purely local concern, which were not covered by the state law.

The City has not sustained the burden of showing that the statute is invalid under amendment 40.

It is contended that the compulsory binding arbitration provisions deny equal protection of the laws, in contravention of U.S. Const. amend. 14 and Const. art. 1, § 12. This argument is also grounded upon the assumption that the decisions of arbitration panels constitute separate laws; and it is suggested that because the almost inevitable result must be that wage levels are different in different cities, there is a denial of equal protection of the laws.

There is no authority cited for the proposition that per-

sons performing the same duties in different localities must be paid the same wage. In fact, it is the City's primary concern that it be allowed to determine what the wages or salaries of its employees will be. It does not deny that wages or salaries freely negotiated may differ from city to city, and implicit in the brief is an acknowledgement that the amount of remuneration which a City can pay its employees, as well as the working conditions which it can provide, depends to a large degree upon its financial resources. Thus, it is not denied that no two cities are exactly alike and that the provisions of employment contracts may, for good reasons, vary from city to city.

■■ Equal protection of the law forbids all invidious discrimination but does not require identical treatment for all without recognition of difference in relevant circumstances. *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n,* 83 Wn.2d 523, 520 P.2d 162 (1974). As the City concedes, RCW 41.56.450 *et seq.* is general in its application. It applies alike to all counties, cities, and political subdivisions covered. The fact that in different circumstances, its provisions may operate to produce a different wage scale or different working conditions does not ipso facto render the law discriminatory. It contemplates that all persons similarly situated—that is, performing the same job within a particular municipality—will be treated alike. The City does not contend otherwise. Again, the burden of proving unconstitutionality has not been sustained.[1]

We reach the contention that the subject of minimum crew requirements is not negotiable. The City does not point to any statute or other law which removes such a decision from the area of negotiation. The trial court observed that this item had been negotiated in the past. It would appear that the size of the crew might well affect the safety of the employees and would therefore constitute a working condition, within the meaning of RCW 41.56.030(4) defining collective bargaining. *See In re*

---

[1]Similar statutes have been generally upheld when their constitutionality has been attacked. *See* Annot., 68 A.L.R.3d 885 (1976).

*Timken Roller Bearing Co.*, 70 N.L.R.B. 500 (1946). However, we are of the opinion that the trial court acted properly in refusing to pass upon this issue at this stage of the proceedings and will ourselves likewise refrain from deciding the issue at this time. There is such a dearth of authority presented to the court,[2] that the decision of this question, which may indeed be of considerable importance to both parties, should await further development of the issue at the arbitration proceeding and more extensive discussion and briefing before the court.

The judgment is affirmed.

STAFFORD, C.J., and HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

---

[2]The City cites only one case, *Fire Fighters Union, Local 1186 v. Vallejo*, 12 Cal. 3d 608, 526 P.2d 971, 116 Cal. Rptr. 507 (1974), on the point, and that case involved a reduction in the size of the entire force, not a minimum crew decision.