[No. 11414–0–I. Division One. February 28, 1983.]

SEVENTH ELECT CHURCH IN ISRAEL, ET AL, *Respondents,*
v. GERALD L. ROGERS, ET AL, *Defendants,*
GINA F. ROGERS, *Appellant.*

*Betts, Patterson & Mines, P.S., Jeffrey Grant,* and *William Fite* (*Grant & Kosnett* and *James V. Kosnett,* of counsel), for appellant.

*Freese & Freese, Inc., Ralph I. Freese, Murphy & McGowan,* and *Richard J. Moore,* for respondents.

CALLOW, J.—This is one of three separate appeals which have arisen out of examinations conducted in proceedings supplemental to a judgment initiated by Seventh Elect Church in Israel, et al, against Gerald L. Rogers and his marital community. Specifically, this appeal is from a judg-

ment which found Gina Rogers, the daughter of Gerald and Priscilla Rogers, in contempt and ordered her incarcerated for her refusal to answer certain questions in supplemental proceedings without demonstrating a sufficient basis for asserting the Fifth Amendment privilege against self-incrimination.

The following issues are presented:

1. Whether Gina Rogers was properly made a party to the supplemental proceedings pursuant to RCW 6.32.030.

2. Whether Gina Rogers established sufficient facts for her to claim the Fifth Amendment right against self-incrimination.

3. Whether the trial court erred in granting Gina Rogers only a temporary stay of execution of an order of contempt and commitment.

4. Whether the trial court erred in refusing to sign a written order of contempt, thereby denying Gina Rogers the right to seek immediate review of such order.

5. Whether the trial court erred in enjoining Gina Rogers from transferring title to her automobile.

6. Whether the trial court erred in requiring Gina Rogers' supersedeas bond to be made payable to the Church.

7. Whether the trial court deprived Gina Rogers of her right to counsel and to due process of law.

In January 1981, judgment for the plaintiffs, Seventh Elect Church in Israel, Arne Skogseth, and Ambrose Schwader (hereinafter collectively referred to as the Church), was entered against Gerald L. Rogers and the marital community composed of Gerald L. Rogers and Priscilla Rogers in King County Superior Court. Unable to satisfy its judgment, the Church subsequently moved, upon notice, for orders requiring Gina F. Rogers, Priscilla Rogers, and Gerald L. Rogers to appear for examinations in proceedings supplemental to a judgment pursuant to RCW 6.32.030.

On March 2, 1982, supplemental proceedings were held in which Gerald Rogers, Priscilla Rogers, and Gina Rogers were called to testify. After testifying to his name and

address, Mr. Rogers asserted the privilege against self–incrimination. The trial court, finding no factual basis for the assertion of the privilege, entered a finding of contempt and an order of incarceration until Gerald Rogers agreed to testify. *See Seventh Elect Church v. [Gerald] Rogers*, 34 Wn. App. 96, 660 P.2d 294 (1983). Priscilla Rogers, Gerald Rogers' wife, also did not testify because Gerald Rogers invoked the marital privilege. This was likewise met with a finding of contempt and an order of incarceration. *See Seventh Elect Church v. [Priscilla] Rogers,* 34 Wn. App. 91, 660 P.2d 290 (1983).

When Gina Rogers was called to testify her counsel objected, asserting that the order requiring her to testify was ex parte and without an adequate factual basis. This objection was overruled by the trial court.

Upon taking the stand, Gina Rogers stated her name and residence. However, when asked how long she had lived at that address, her counsel asserted a Fifth Amendment claim, alleging that due to potential criminal liability, Gina Rogers would claim her constitutional privilege against self–incrimination. The trial court then requested some specific factual support for the claim so it could make an intelligent assessment of the validity of the claim. Gina Rogers' counsel offered certain speculations as to potential criminal liability and requested the trial court to use its reasonable judicial imagination in assessing the claim. Her counsel also referred to the showing made by Gina Rogers' father, Gerald Rogers, who had testified previously. Essentially, that showing was that certain investigations were being conducted by various federal and state agencies regarding criminal activity by Gerald Rogers. Gina Rogers' counsel asserted that Gina Rogers may have been involved with her father in some of the transactions under investigation.

The trial court found the showing to be an inadequate basis for asserting the claim of "privilege" and offered counsel an opportunity for an in camera hearing. This offer was declined and Gina Rogers' counsel advised the court

that Gina Rogers would not answer the question previously asked, to wit, "How long have you lived there?" The trial court then found Gina Rogers in contempt and ordered her incarcerated until such time as she answered the question. However, the trial court granted a temporary stay until the Court of Appeals could review the issue on an emergency basis. The stay was terminated by the Court of Appeals without prejudice to renewal of the motion following an in camera hearing and a further showing that there was a reasonable possibility that the answer to the question might be self–incriminating.

The proceedings were resumed in the trial court shortly thereafter and an in camera hearing was conducted in the absence of counsel for the Church. After the in camera hearing, the trial court indicated in open court that "there is nothing the court has received so far that we didn't already know in open court." Thereupon, a second in camera hearing was conducted. Following that hearing, the trial court again indicated that the court had only been furnished documents which had already been recited in open court. Moreover, the trial court stated:

> [A]t the time the court proposed a question which would begin to touch on a basis which might enable the court to make a decision as to whether Miss Rogers has properly asserted her 5th Amendment privilege, she was advised not to answer.

Based upon this finding, the trial court executed its prior order of contempt and committed Gina Rogers to jail until she answered the question. At that point, Gina Rogers' counsel advised the court that Gina Rogers would answer the question, and she did.

Counsel for Gina Rogers then drafted a proposed order incorporating the trial court's decision regarding its finding of contempt so that the decision could be appealed. The trial court, however, refused to sign such order since Gina Rogers had answered the question and purged herself of the contempt.

Thereafter, Gina Rogers proceeded to answer questions.

During the questioning, the Fifth Amendment claim was asserted several times, but each time was denied by the court and Gina Rogers was directed to answer. Based on the prior in camera hearings, the court refused to allow Gina Rogers to make a further showing, in camera, as to the basis of any claim of the privilege against self–incrimination.

At one point in the examination, Gina Rogers testified that a Datsun automobile was given to her by her parents in September of 1981. The Church then moved for and was granted an order enjoining Gina Rogers from transferring the automobile, pending a hearing to adjudicate title to the vehicle.

The next day, March 9, 1982, when the examination resumed, Gina Rogers answered several questions but asserted her Fifth Amendment right against self–incrimination in response to the following questions:

[1] Miss Rogers, when you took the trip on the boat in the summer of 1979 . . . [w]hich segment of the trip were you on, and from what location to what location did you travel on the boat?

. . .

[2] Miss Rogers, during, the period of time that you were working at Nordstrom . . ., what was your salary there?

. . .

[3] Miss Rogers, on which day of the month are the automatic deposits made into your bank account at Rainier National Bank?

. . .

[4] And what was your last date of employment at the Aurora Village Nordstrom?

. . .

[5] Other than the trip on the OLD GLORY, also known as the HARTFORD QUALITY, which you took in the summer of 1979, have you taken any other trips or excursions on that ship?

. . .

[6] Where are the records of Cadatagir located?

. . .

[7] Miss Rogers, in relationship to the silver Rolls

Royce, when did you first see that automobile?

. . .

[8] Miss Rogers, when was the first time you saw the Clenay (phonetic) automobile?

. . .

[9] Miss Rogers, what airplane trips have you taken with your father in the last three years?

. . .

[10] Do you know who paid them [the Siversons]?

. . .

[11] Are you familiar with an entity called Wall Street Investment Company S.A.?

. . .

[12] Are you familiar with an entity called Wall Street Mortgage and Investment Company S.A.?

She was found in contempt of court and ordered incarcerated until she chose to answer the questions. The basis of this finding was that the trial court had no knowledge or information on which to base a finding that her answers would incriminate her. This order of contempt and commitment was incorporated into a written order and signed by the trial court on March 9, 1982.

An emergency appeal was immediately taken by Gina Rogers. The matter was remanded to the trial court for the fixing of a supersedeas bond staying execution of the order holding Gina Rogers in contempt, pending review. On remand, the trial court found that a $5,000 supersedeas bond was reasonable and that said sum would reasonably insure the appearance of Ms. Rogers and would further represent a potential fund available should the Church be harmed as a result of Gina Rogers' contempt.

The first issue is whether Gina Rogers was properly made a party to the supplemental proceedings pursuant to RCW 6.32.030.

RCW 6.32.030 states:

Any person may be made a party to a supplemental proceeding by service of a like order in like manner as that required to be served upon the judgment debtor, and upon proof by affidavit or otherwise, to the satisfaction of the judge, that execution has been issued and

return made thereon wholly or partially unsatisfied, and also that any person or corporation has personal property of the judgment debtor of the value of twenty–five dollars or over, or is indebted to him in said amount, or is holding the title to real estate for the judgment debtor, or has knowledge concerning the property interests of the judgment debtor, the judge may make an order requiring such person or corporation, or an officer thereof, to appear at a specified time and place before him, or a referee appointed by him, and answer concerning the same.

The affidavit submitted by the Church pursuant to its motion for an order requiring third parties to appear for examination stated:

Darren J. Rogers, Carrie L. Rogers, Tamara A. Rogers and Gina F. Rogers are the four children of Gerald L. Rogers and Priscilla A. Rogers, and are all over eighteen years of age. . . .

Darren J. Rogers, Carrie L. Rogers, and Tamara A. Rogers are listed as the initial directors of CADATAGIR, INC., a Washington corporation which was the title owner of the residence of Gerald L. Rogers from May 1979 until January 26, 1981, at which time the property was reconveyed to John and Deborah Vibet three days before entry of judgment in No. 848238. Darren J. Rogers was the incorporator of "CADATAGIR", and has been listed as an officer of the corporation along with the other Rogers children. . . .

I believe each of the Rogers children has knowledge concerning the property interest of the judgment debtors, and may be holding title to property of the judgment debtors.

The trial court did not err in finding that an adequate factual basis existed to justify requiring Gina Rogers to appear and be examined in the supplemental proceedings. The affidavit provided a sufficient factual basis that Gina Rogers might be holding title to real estate of Gerald Rogers or might have knowledge concerning the property interests of Gerald Rogers.

The second issue is whether Gina Rogers established sufficient facts to entitle her to invoke her Fifth Amendment right against self–incrimination.

██ RCW 6.32.200 states in part, "[b]ut an answer cannot be used as evidence against the person so answering in a criminal action or criminal proceeding." The immunity conferred upon a witness testifying in proceedings supplemental to a judgment is inadequate to justify the compulsion of testimony over a claim of the Fifth Amendment privilege against self–incrimination. *Eastham v. Arndt,* 28 Wn. App. 524, 624 P.2d 1159 (1981). Thus, a witness may assert the privilege against self–incrimination notwithstanding the statutory grant of immunity.

 The federal guaranty against self–incrimination has been extended to the states. *Malloy v. Hogan,* 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964). This right has been extended to civil proceedings and protects any disclosures which a witness reasonably may believe could be used in a criminal prosecution or which could lead to other evidence that might be so used. *In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 557, 87 S. Ct. 1428 (1967); *In re Green,* 14 Wn. App. 939, 944, 546 P.2d 1230 (1976). Furthermore, article 1, section 9 of the Washington Constitution has its own constitutional provision regarding the right against self–incrimination.

The Fifth Amendment privilege extends not only to answers that would support a criminal conviction, but includes those which would furnish a link in the chain of evidence needed to prosecute the witness for a crime. *Hoffman v. United States,* 341 U.S. 479, 95 L. Ed. 1118, 71 S. Ct. 814 (1951). However, it is for the court to determine whether silence is justified, *Rogers v. United States,* 340 U.S. 367, 95 L. Ed. 344, 71 S. Ct. 438, 19 A.L.R.2d 378 (1951), and to require the witness to answer if it appears that the witness is mistaken. *Hoffman,* at 486.

> The power to decide whether the witness shall be immune from answering certain questions put to him on the ground that the answers will incriminate him is thus vested in the trial court to be exercised in its sound discretion under all of the circumstances then present.

*State v. Parker,* 79 Wn.2d 326, 332, 485 P.2d 60 (1971).

The difficulty arises when a seemingly innocuous question is asked so that the incriminating nature of the answer is not evident from the implication of the question in the setting of the circumstances from which it arises. In such cases, "[t]he only practicable solution is to be content with the door's being set a little ajar, and while at times this no doubt partially destroys the privilege, and at times it permits the suppression of competent evidence, nothing better is available." *United States v. Weisman,* 111 F.2d 260, 262 (2d Cir. 1940).

> To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence."

*Hoffman,* at 486–87.

We said in *Eastham v. Arndt, supra* at 531–32 (quoting *Thoresen v. Superior Court,* 11 Ariz. App. 62, 66, 461 P.2d 706 (1969)):

> The facts of each particular case are controlling and few general rules can be drawn regarding the degree to which a showing of specific danger is required. A witness need not conclusively demonstrate that his answers will subject him to prosecution, but it is fair to state that in order to effectively invoke the privilege, a witness must establish a factual predicate from which the court can, by use of "reasonable judicial imagination" (aided by suggestions of counsel), conceive of a sound basis for the claim.

Also, the decision in *Seventh Elect Church v. [Gerald] Rogers, supra,* reaffirmed the proposition that the burden is on the judgment debtor to demonstrate to the trial court a reasonable factual predicate that his answer would incriminate him in order to sustain a claim of the privilege.

In *Eastham* we further approved a procedure whereby an in camera hearing could be conducted to determine whether there was a sufficient factual predicate to justify the asser-

tion of the privilege claim. *Eastham,* at 533–34. However, we also indicated that where the external circumstances support the privilege claim, an in camera hearing is not required. *Eastham,* at 534 n.2.

> Since the *in camera* inspection itself, "partially destroys the privilege" . . . the standards for permitting even so limited a breach of confidentiality should be exacting. Certain initial or threshold showings of need must be required and the burden of convincing the court that such need exists should be a substantial one.

*In re Farber,* 78 N.J. 259, 304, 394 A.2d 330 (1978) (Handler, J., dissenting).

In this case, Gina Rogers was given several opportunities in open court as well as two in camera hearings to demonstrate to the trial court the validity of her privilege claim. Although the Church's counsel was excluded, counsel for Gina Rogers was allowed to participate in the in camera hearings which were conducted in chambers with the judge and a court reporter present. A record of these proceedings was made separate from the record of proceedings made in open court. The exhibits which were submitted were sealed to be opened "only upon court order or by reporter in connection with production of in camera record" for purposes of appeal. This procedure was proper. *See United States v. Goodwin,* 625 F.2d 693, 702 (5th Cir. 1980). The same procedure should have been followed with the verbatim report of the in camera proceedings. A review of the in camera record indicates that no more was disclosed in camera than in open court. In other words, Gina Rogers did not provide sufficient information which would have set the door ajar so that the trial court could make an intelligent assessment of the validity of the privilege claim.

The record does not establish that Gina Rogers has demonstrated a sufficient nexus between possible criminal prosecution and the questions asked. The incriminating nature of these questions is not obvious from the questions themselves, and a showing that there may be both federal and state criminal investigations against her father is insuffi-

cient to demonstrate that the answer to the proffered question would result in her self–incrimination. There is nothing in the record to link Gina Rogers, even remotely, with any criminal investigation or proceeding. She offered no evidence to show that her apprehension was anything other than imaginary. "It is well established that the privilege protects against real dangers, not remote and speculative possibilities." *Zicarelli v. New Jersey Comm'n of Investigation,* 406 U.S. 472, 478, 32 L. Ed. 2d 234, 92 S. Ct. 1670 (1972). Thus, Gina Rogers did not sustain her assertion of the privilege and the trial court properly entered the contempt decree.

The third issue is whether the trial court erred in granting Gina Rogers only a temporary stay of execution of an order of contempt and commitment.

Gina Rogers contends that since the trial court found both Gerald and Priscilla Rogers in contempt and ordered their incarceration, but then stayed execution of such order pending appeal, that it should have done the same with her. When the trial court granted her only a temporary stay of execution, Rogers urges, it violated her right to equal protection of laws inasmuch as she was in the exact same circumstances as her parents. Her contention is not well taken.

■ First, the constitutional right to equal protection of the laws is not applicable under the facts.

> Equal protection of the laws is denied when state officials enforce the law with an "unequal hand or evil eye." *Yick Wo v. Hopkins,* 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064 (1886). Mere selectivity in prosecution creates no constitutional problems; defendant must show deliberate or purposeful discrimination based on an unjustifiable standard such as race, religion, or other arbitrary classification. *United States v. Steele,* 461 F.2d 1148 (9th Cir. 1972); *Yakima v. Johnson,* 16 Wn. App. 143, 553 P.2d 1104 (1976).

*Spokane v. Hjort,* 18 Wn. App. 606, 608, 569 P.2d 1230 (1977). The guaranty of equal protection "forbids all invidious discrimination but does not require identical treatment

for all without recognition of difference in relevant circumstances." *Everett v. Fire Fighters' Local 350,* 87 Wn.2d 572, 576, 555 P.2d 418 (1976). Gina Rogers has not shown that the trial court discriminated against her on the basis of race, religion, or some other arbitrary classification or that she was similarly situated with her parents. Rather, the trial court found that whereas Gerald and Priscilla Rogers had asserted some type of a criminal exposure and thus a colorable claim for asserting the privilege, Gina Rogers had not met this minimum requisite. Thus, the trial court did not deny her the equal protection of the law.

■ Second, "[p]unishment for contempt of court is within the sound discretion of the judge so ruling. Unless there is abuse of a trial court's exercise of discretion, it will not be disturbed on appeal." *State v. Caffrey,* 70 Wn.2d 120, 122–23, 422 P.2d 307 (1966). Here, since the order was discretionary, it will not be reversed on appeal except on a clear showing of abuse, that is, "discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971). We cannot say that the trial court abused its discretion in granting Rogers only a temporary stay.

The fourth issue is whether the trial court erred in refusing to sign a written order of contempt, thereby denying Gina Rogers the right to seek immediate review of such order.

Initially, the trial court signed a written order of contempt and order of incarceration when Gina Rogers refused to answer how long she had lived at the Boylston residence. The trial court, however, granted her a temporary stay to enable her to file an emergency appeal for a stay of the execution of the order. On March 5, 1982, that stay was denied and the cause remanded for an in camera hearing.

On remand, Gina Rogers made an additional showing in camera but the trial court found that the additional evidence did not justify the assertion of the privilege. The trial court then was prepared to execute its previous order of

contempt and incarceration when counsel advised the court that Gina Rogers would answer the question, and she did.

Counsel for Gina Rogers then requested the court to sign a proposed order which incorporated the trial court's oral decision regarding the contempt. The trial court refused to sign the order since she had answered the question, thereby purging her contempt. The trial court subsequently did sign the order when Gina Rogers asserted her privilege against self–incrimination and refused to answer the 12 questions which are the subject of this appeal.

The trial court acted correctly in not signing the order of contempt and incarceration after Gina Rogers had answered the question. She had purged herself of contempt at that time.

The fifth issue is whether the trial court erred in enjoining Gina Rogers from transferring title to her automobile.

During the supplemental proceedings, the trial court enjoined Gina Rogers from transferring the automobile given to her by her parents. She contends this was in error since the provisions of CR 65 were not complied with. We disagree.

RCW 6.32.120 states:

> The judge by whom the order or warrant was granted or to whom it is returnable may make an injunction order restraining any person or corporation, whether a party or not a party to the special proceeding, from making or suffering any transfer or other disposition of or interference with the property of the judgment debtor or the property or debt concerning which any person is required to attend and be examined, until further direction in the premises. Such an injunction may be made simultaneously with the order or warrant by which the special proceeding is instituted, and upon the same papers or afterwards, upon an affidavit showing sufficient grounds therefor. The judge or court may, as a condition of granting an application to vacate or modify the injunction order require the applicant to give security in such sum and in such manner as justice requires.

Furthermore, CR 69(a) states:

> The procedure on execution, in proceedings supple-

mentary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state as authorized in RCW 6.04, 6.08, 6.12, 6.16, 6.20, 6.24, 6.32, 6.36, and any other applicable statutes.

██ Thus, the trial court did not err in granting an injunction enjoining Gina Rogers from transferring title to her automobile. Such procedure is authorized by RCW 6.32.120 and CR 69. CR 69 contemplates that the requirement of CR 65 need not be met in supplemental proceedings under RCW 6.32. Finally, since Rogers had notice of the supplemental proceedings, the trial court could restrain Gina Rogers from conveying or interfering with property involved in the proceedings. *Smith v. Weed,* 75 Wash. 452, 465, 134 P. 1070 (1913).

The sixth issue is whether the trial court erred in requiring Gina Rogers' supersedeas bond to be made payable to the Church.

Pursuant to the order entered March 9, 1982, Gina Rogers was incarcerated. The trial court stayed execution of the order of contempt and set the supersedeas bond in the amount of $5,000, "said bond to guarantee payment by GINA F. ROGERS to [the Church] of any damages which shall be adjudged due [the Church] caused by GINA F. ROGERS' refusal to answer questions as ordered."

RAP 8.1(b) states:

> Except when prohibited by statute, a party may supersede the enforcement of a money judgment or decision affecting property by filing a supersedeas bond executed by one or more sureties approved by the trial court. The bond must be conditioned for the satisfaction of the judgment in full together with interest and costs, and the satisfaction in full of any probable modification of the judgment by the appellate court. . . .
>
> . . .
>
> (2) *Decision Affecting Property.* If the decision determines the disposition of property in controversy, or if the property is in the custody of the sheriff, or if the proceeds of the property or a bond for its value are in the custody or control of the court, the amount of the super-

sedeas bond shall be fixed at such sum only as will secure any money judgment plus the amount of loss which a party may be entitled to recover as a result of the inability of the party to enforce the judgment during review.

■ The primary purpose of a supersedeas bond is not to ensure appearance, but to delay the execution of judgment against property of the debtor and to guarantee that the debtor's ability to satisfy the judgment cannot be altered pending outcome of the appeal. *Murphree v. Rawlings,* 3 Wn. App. 880, 882, 479 P.2d 139 (1970); *see Malo v. Anderson,* 76 Wn.2d 1, 454 P.2d 828 (1969).

The trial court did not err in setting the bond in an amount which would represent a potential fund available to the Church should the Church ultimately be able to demonstrate damages caused by Gina Rogers' delay. Since the bond was set in accordance with RAP 8.1(b)(2), the amount was proper. *See also* RCW 6.08.020.

The seventh issue is whether the trial court deprived Gina Rogers of her right to counsel and to due process of law.

■ Gina Rogers' contention that the trial court deprived her of her Sixth Amendment right to effective assistance of counsel under the sixth and fourteenth amendments to the United States Constitution is frivolous. The Sixth Amendment applies only to criminal proceedings.

In all criminal prosecutions, the accused shall enjoy . . ., and [have] the assistance of counsel for his defense.

U.S. Const. amend. 6. No similar right is given to parties in civil actions.

■ Gina Rogers further contends that the totality of the proceedings below violated her constitutional right of due process under both the United States and Washington Constitutions. She has not explained the basis of this assertion other than claiming that all the previously asserted assignments of error violate due process. Since this contention is not supported by authority, it need not be considered on appeal. *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976); *Jeffery v. Weintraub,* 32 Wn. App. 536,

648 P.2d 914 (1982).

The trial court may execute the judgment of contempt and incarcerate Gina Rogers until such time as she answers the subject questions. She must also answer all questions which are relevant unless a real danger of incrimination is specifically established with respect to each question. There is no blanket Fifth Amendment right to refuse to answer all questions, but rather, the privilege must be claimed as to each question. *Capitol Prods. Corp. v. Hernon,* 457 F.2d 541, 542 (8th Cir. 1972).

DURHAM, A.C.J., and RINGOLD, J., concur.

Reconsideration denied March 29, 1983.

Review denied by Supreme Court June 3, 1983.