IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 82638-7-I |
| | ) | |
| PATRICK JOHN D'ABBRACCI, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| DANA F. D'ABBRACCI, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Dana D'Abbracci challenges the trial court's entry of a permanent restraining order protecting her former spouse, Patrick D'Abbracci, and his children.[1] Dana does not establish the trial court abused its discretion by entering the order or denying Dana's motion to reconsider it. Therefore, we affirm.

FACTS

Dana and Patrick married in August 2017. They have no children together, though Patrick has three children from a prior relationship. In December 2019, Patrick petitioned for dissolution of the parties' marriage and requested a fair and equitable distribution of property and debts, as well as a restraining order.

A dissolution trial took place over two days in November 2020. Disputed

---

[1] Because the parties share a last name, we refer to them by their first names for clarity. We intend no disrespect.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

issues included the distribution of various financial accounts and personal property, valuation of the parties' Edmonds home, and Dana's request for spousal maintenance. Specifically, Dana requested $6,000 per month in maintenance for 12 months, arguing in her trial brief that she could not find a job because of a domestic violence protection order (DVPO) "that was entered related to events on December . . . 7, 2019 and a criminal prosecution that was eventually dismissed." She also claimed that her ability to work was limited because of injuries she sustained during the December 7, 2019 incident.

At trial, testimony as to the December 7, 2019 incident was conflicting. Patrick claimed that Dana had assaulted him. Meanwhile, Dana testified that she called the police because Patrick had assaulted her. In any case, it was undisputed that responding officers ultimately arrested Dana and booked her into the Snohomish County Jail. It was also undisputed that Patrick later petitioned for and obtained a DVPO protecting himself and his children from Dana. And, although the charges were later dismissed, Dana was charged with fourth degree assault, alleged as a crime of domestic violence.

Dana attested that while she was in jail following her arrest, she noticed bruises on her body. When she was released two days later, she went to the hospital, where she was examined by a registered nurse, Stephanie Wahlgren, who also testified at the dissolution trial. Wahlgren testified that she observed bruising on Dana's legs, right arm, flank, and buttock area. When asked what Dana told her about how she received these injuries, Wahlgren responded, "She told me that she was in an altercation with her spouse." On cross-examination,

2

Wahlgren testified that Dana also reported, with regard to the underlying incident, that she thought someone had slipped a drug into her drink while she was at a bar earlier, and she had a memory lapse from the time she got home until she woke up in the back seat of a police car. Wahlgren described Dana's injuries as "unexplained" and confirmed that Wahlgren herself had no personal knowledge of how Dana received them. Dana, through counsel, attempted to admit Wahlgren's report into evidence; however, the trial court excluded it as hearsay. But, the court admitted numerous photographs Wahlgren took of Dana's injuries.

Dana testified that after the December 7, 2019 incident, she took a domestic violence leave from her job as an emergency room (ER) nurse. She testified that her employer later terminated her because of her arrest and the DVPO.

Dana also testified that the DVPO had been hindering her ability to find another job, and she believed replacing it with a restraining order would help. She testified that Patrick cooperated at her request to have the DVPO dismissed and replaced with a temporary restraining order (TRO) in this dissolution proceeding. The TRO, which was entered on June 15, 2020 and admitted as an exhibit at trial, protected Patrick and his children. The TRO stated that it would end "in 12 months or on . . . entry of final divorce order." (Underlining omitted). It also contained the following stipulation: "The parties stipulate that the provisions of this order shall be included in a final divorce order unless the parties agree other wise [sic] in settlement of the case." Dana, Patrick, and their respective attorneys each signed the TRO, and Dana confirmed at trial that she authorized its entry. Dana also testified that although she believed signing the restraining order would help her

find work, it was still a problem because "[i]f you have . . . anything mentioned about . . . restraints against children, you're excluded from working with children [and] any individuals that would be mentally incapacitated basically, which frequently I do as an ER nurse."

The trial court issued an oral decision regarding the parties' dissolution on January 22, 2021. After distributing property and assets, it denied Dana's request for maintenance, explaining that among other factors, it "doesn't find by a preponderance of the evidence that [Dana] is unable to work." Dana, through counsel, urged the trial court to reconsider its ruling. Counsel argued that the criminal matter, though dismissed, continued to be a "pollutant type of influence on [Dana's] ability to get a job," and that this "does tie in with the restraining order issue." The trial court adhered to its ruling denying maintenance, indicating it was unpersuaded that the restraints were preventing Dana from securing employment and that it "just can't reason with" requiring a person protected under a restraining order to pay maintenance based on a claim that the order was denying the restrained person the opportunity to work. The court also observed that the parties had stipulated to continuing restraints. It expressed that while it might be a "generous gesture" for Patrick to agree that a restraining order not be made part of the final dissolution decree, the court was "not in a position to order that that take place" given the parties' stipulation.

On February 12, 2021, the trial court entered a dissolution decree (decree), in which it approved Patrick's request for a restraining order, and written findings of fact and conclusions of law (findings and conclusions). Among these was a

conclusion that "[t]he court should approve a Restraining Order because the parties stipulated that the provisions of a temporary restraining order entered on June 15, 2020 would be included in the Final Divorce Order." (Emphasis omitted). The court simultaneously entered a permanent restraining order prohibiting Dana from contacting Patrick and his children.

Dana, proceeding pro se, moved for reconsideration of the restraining order. Dana argued that the order "was entered without [her] permission or consent" and that all restraints should have terminated upon entry of the decree. On April 12, 2021 the trial court denied her motion for reconsideration, stating,

> Petitioner's Exhibit 7 admitted without objection at trial contained a stipulation signed by the parties and their attorneys, that the provisions of the [TRO] shall be included in a final Divorce Order unless the parties agree otherwise in the settlement of the case. [Dana] testified at trial that she signed the stipulation because she believed the restraining order, unlike the DVPO, would help her get employment.

Dana appeals.

ANALYSIS

I.    Decisions Under Review

We note at the outset that in her notice of appeal, Dana designated not only the trial court's April 12, 2021 order denying her motion for reconsideration, but also (1) the trial court's February 12, 2021 decisions (the findings and conclusions, the decree, and the permanent restraining order), (2) the June 15, 2020 TRO, and (3) a June 15, 2020 order, entered in a separate proceeding, terminating the DVPO. Before addressing the merits of Dana's appeal, we must determine which of these decisions are properly before us for review.

Dana filed her notice of appeal on May 11, 2021. A notice of appeal is timely if it is filed in the trial court within 30 days after the entry of the decision that the party filing the notice wants reviewed or denial of a timely motion for reconsideration. RAP 5.2(a), (e); see also Stedman v. Cooper, 172 Wn. App. 9, 14, 292 P.3d 764 (2012) ("[A] timely motion for reconsideration in the trial court will extend [the time to file a notice of appeal] until 30 days after entry of the order deciding that motion.").

Dana's notice of appeal was not timely with regard to either the TRO or the order terminating the DVPO, each entered almost a year earlier. Furthermore, the record does not show that any notice of appeal was filed in the separate proceeding in which the DVPO was entered, and a TRO is not, in any event, a final judgment appealable as a matter of right. See RAP 2.2(a) (listing the types of superior court decisions that are appealable as a matter of right); see also State ex. rel. Carroll v. Simmons, 61 Wn.2d 146, 149, 377 P.2d 421 (1962) (temporary order merges into the final judgment, rendering any challenge to the temporary order moot). For the foregoing reasons, the June 15, 2020 orders are not properly before us for review.

Dana's notice of appeal also was not filed within 30 days of the trial court's entry of the February 12, 2021 decisions, i.e., the findings and conclusions, the decree, and the restraining order. However, Dana's notice of appeal was filed within 30 days after the trial court entered its order denying Dana's timely motion for reconsideration of the restraining order. So, Dana's notice of appeal was timely with regard to both the restraining order and the order denying reconsideration.

6

And although Dana's notice of appeal was not timely with regard to the findings and conclusions and the decree, these decisions convey the trial court's determination that a restraining order should be approved. We may review this determination because it prejudicially affects the restraining order. See RAP 2.4(b) (appellate court will review a trial court order or ruling if it "prejudicial affects" the decision designated in the notice of appeal and is made before the appellate court accepts review); Adkins v. Alum. Co. of Am., 110 Wn.2d 128, 134, 750 P.2d 1257 (1988) (ruling prejudicially affects a decision if the decision would not have occurred absent the ruling).

In sum, the only trial court decisions properly before us for review are the permanent restraining order, the order denying reconsideration of that order, and the trial court's determination, conveyed in the decree and the findings and conclusions, that a restraining order should be approved. To the extent Dana challenges other aspects of the decree and the findings and conclusions, entry or termination of the DVPO, or the TRO, we do not consider those challenges.

II.    Restraining Order

Dana contends that the trial court erred by entering the permanent restraining order. We disagree.

We review a trial court's decision to impose a restraining order for abuse of discretion. In re Marriage of Freeman, 169 Wn.2d 664, 671, 239 P.3d 557 (2010). "'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons,'" or if it bases a discretionary ruling on an error of law. In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108

7

P.3d 779 (2005) (quoting In re Marriage of Littlefield, 133 Wn.2d 39, 46–47, 940 P.2d 1362 (1997)); Lopez-Stayer ex. Rel. Stayer v. Pitts, 122 Wn. App. 45, 51, 93 P.3d 904 (2004).

As a pro se litigant, Dana is held to the same standard as an attorney and must comply with all procedural rules on appeal. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). Among these rules is RAP 10.3(a)(4), which requires the appellant to assign error to "each error [the appellant] contends was made by the trial court." RAP 10.3(a)(6) further requires an appellant to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."

Here, Dana argues that the restraint provisions of the TRO should have terminated upon entry of the decree. But this argument ignores the parties' stipulation—as expressly set forth in the TRO and signed by both the parties and their attorneys—that the TRO's provisions would be included in the decree. And as Patrick points out, Dana does not assign error to the trial court's conclusion that it should approve a restraining order based on this stipulation.

Furthermore, Dana provides no legal authority or meaningful analysis to support the proposition that the trial court either misinterpreted or should have ignored the stipulation. Cf. Baird v. Baird, 6 Wn. App. 587, 589, 494 P.2d 1387 (1972) (agreement signed by the parties or their attorneys is generally binding on the parties). Similarly, to the extent Dana asserts as she did below that she entered into the agreement based on an incorrect belief that it would help her find employment, she cites no authority for the proposition that the trial court abused

its discretion by not setting the stipulation aside on that basis, particularly where the court was unpersuaded that the restraints rendered Dana unable to work. Cf. Stevenson v. Hazard, 152 Wash. 104, 109, 277 P. 450 (1929) (decision whether to relieve a party from a stipulation is in the trial court's discretion); Lavigne v. Green, 106 Wn. App. 12, 20, 23 P.3d 515 (2001) (declining to set aside settlement agreement based on party's assertion that settlement amount turned out to be wholly insufficient to meet obligations associated with settled claim). Dana does not establish that the trial court abused its discretion by entering the permanent restraining order based on the parties' stipulation.

Dana raises a number of additional arguments in support of reversal, several of which are premised on an assertion that Patrick "brutally assaulted" Dana, who was the "actual abuse victim[]," and that the trial court erred to the extent that it did not so find. But as discussed, there was conflicting testimony as to the December 7, 2019 incident, including testimony that Dana herself had no memory of the alleged assault. It was within the exclusive province of the trial court to evaluate witness credibility, weigh the evidence, and determine that the evidence did not support a finding that Patrick assaulted Dana. That determination will not be disturbed on appeal. See Ives v. Ramsden, 142 Wn. App. 369, 382, 174 P.3d 1231 (2008) ("[W]e do not weigh evidence or render judgments regarding witness credibility; that is the exclusive province of the trier of fact.").

Also, Dana largely fails to cite relevant legal authorities or provide meaningful analysis in support of her various arguments on appeal. She further fails to explain why a number of the trial court's alleged errors require reversal of

9

the restraining order given that the court based its entry of the order entirely on the parties' agreement. The foregoing failures are fatal to Dana's appeal. See Cook v. Brateng, 158 Wn. App. 777, 794, 262 P.3d 1228 (2010) ("Appellate courts need not consider arguments that are unsupported by pertinent authority, references to the record, or meaningful analysis."); see also Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wn.2d 188, 196, 668 P.2d 571 (1983) ("[E]rror without prejudice is not grounds for reversal."). Nevertheless, we address Dana's individual arguments to the extent they are adequately briefed.

A.     Trial Court's Oral Ruling

Dana first asserts that the trial court erred by entering the restraining order because it contradicted the trial court's oral ruling stating, "with regards to the restraining order, I'm not going to consider that."

Dana takes the trial court's statement out of context. On the final day of trial, the court requested an accounting of jewelry that Dana claimed was still in Patrick's possession. Later, when issuing its oral ruling, the court observed that although Patrick had provided the requested accounting, Patrick had also submitted information that the court "didn't ask for," including an "exhibit regarding the restraining order." When asked to address this, Patrick's counsel stated, "[I]f you want to disregard the information beyond specifically what you requested, I don't . . . think there's any problem with that . . . . We were just trying to give you some . . . more up-to-date information on the status of . . . the restraining order issue." The court then stated, "[W]ith regards to the restraining order, I'm not going to consider that; I haven't even considered that as part of my decision. My decision

10

regarding any issues of the restraining order is solely based on the evidence that came up in trial. So I'm disregarding that information."

It is clear from the context that the trial court was declining to consider the additional information Patrick submitted after trial, not declining to consider the restraining order altogether. Dana does not establish any contradiction between the trial court's statement and its entry of the restraining order.

### B. Evidence of the DVPO

Dana next contends that because it was later terminated with prejudice, the trial court erred by admitting evidence of the DVPO. In support, Dana relies on CR 41(d) and ER 904. CR 41(d) authorizes an award of costs "[i]f a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant." ER 904 deems certain categories of documents admissible if disclosed as provided under that rule. Neither of these rules renders evidence of the DVPO inadmissible merely because it was terminated with prejudice.

Dana also argues that Patrick's filing of a copy of the DVPO in this proceeding violated "US Code 1324c." This appears to be a reference to 8 U.S.C. § 1324c, which penalizes document fraud in connection with federal immigration proceedings. That statute does not apply to this proceeding. Dana does not establish that the trial court erred by admitting evidence of the DVPO.

C.      Reliance on Dismissed Criminal Charge

Next, Dana argues that the trial court erred because it "relied upon DISMISSED criminal Domestic Violence 4 charge in Oral Verdict, labeling [Dana] as the perpetrator of DV."  (Emphasis in original).

But contrary to Dana's assertion, the trial court did not label Dana as the perpetrator of domestic violence.  The remarks Dana takes issue with were made as the court explained its reasoning for not ordering Patrick to pay Dana's criminal defense fees.  The trial court observed, accurately, that it was undisputed that Dana was the one arrested following the December 7, 2019 incident and that charges were later filed against her.  The court explained that if there had been proof by a preponderance of the evidence that Patrick had assaulted Dana, it might be inclined to order Patrick to pay Dana's criminal defense fees.  But, it explained, under the evidence presented, that outcome would not be fair or equitable.  In short, contrary to Dana's assertions, the trial court was not labeling Dana as the perpetrator or finding that she committed domestic violence.  Instead, it was explaining why it could not find that Patrick had committed domestic violence so as to justify ordering him to pay Dana's criminal defense fees.

D.      Exclusion of Examining Nurse's Report

Dana next contends that the trial court erred when it deemed Wahlgren's report inadmissible under ER 803[2] and then "negated" Dana's and Wahlgren's "extensive testimony" regarding Dana's injuries.

_____

[2] ER 803 sets forth exceptions to the general rule that hearsay is inadmissible.

12

But an evidentiary error does not require reversal unless it is prejudicial, i.e., unless "the error, within reasonable probability, materially affected the outcome." State v. Stenson, 132 Wn.2d 668, 709, 940 P.2d 1239 (1997). Even assuming the trial court erred in concluding that Wahlgren's report was not admissible under any of the ER 803's hearsay exceptions, reversal is not required because any such error would not be prejudicial for three reasons.

First, although the trial court excluded Wahlgren's report, it admitted Wahlgren's photographs and allowed Wahlgren to testify as to the injuries she observed, as well as what Dana reported to her as to who caused those injuries. Therefore, Wahlgren's report was not prejudicial because it was merely cumulative of her testimony. Brown, 100 Wn.2d at 196. Indeed, even Dana acknowledges that Wahlgren's testimony "corresponds with" Wahlgren's report stating that Dana indicated Patrick was her assailant, and that Wahlgren "went into great detail about [Dana]'s extensive bruising . . . and the nurse reviewed the 40 pictures she took of the extensive bruising to [Dana]'s body."

Second, although Dana argues that Wahlgren's report would have contradicted the trial court's remark that "it is unclear" what caused Dana's injuries, that remark was based on the court's accurate observation that Wahlgren, who had no personal knowledge of the events of December 7, "couldn't testify as to the cause . . . of the injury." The court's observation would not have been any less accurate had Wahlgren's report been admitted.

Finally, as previously discussed, the trial court's decision to enter the restraining order was based on the parties' stipulation. Consequently, Dana does

not establish that there is any reasonable probability that the trial court would have ruled any differently regarding the restraining order had it admitted Wahlgren's report.

E.    Judicial Bias

Dana argues the trial court "demonstrated clear bias and a presumption of [Dana]'s criminal guilt, which was not the subject before the court, when [it] repeatedly focused on [Dana]'s arrest the night [Dana] was assaulted." In support, Dana points out that during its oral ruling, the trial court observed that this case was a dissolution case, not a domestic violence case. Dana asserts that the trial court was biased because despite this observation, the court later referred to the undisputed evidence that Dana was the one arrested for the December 7, 2019 incident "despite the multitude of evidence" detailing Dana's injuries.

But again, the trial court's observations about the undisputed evidence of Dana's arrest and the charges against her were accurate. And as explained above, the trial court did not find that Dana had committed domestic violence, but made its observations in explaining why it could not find that Patrick had. As also explained above, the trial court was within its province to weigh the evidence and determine that despite the testimony about Dana's injuries, the evidence did not support a finding that Patrick caused them. The trial court's observations and determinations do not constitute bias. See In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004) ("Judicial rulings alone almost never constitute a valid showing of bias," and a party asserting bias must provide "specific facts establishing that the trial judge had a personal bias against [that party].").

F.    Cause of Injuries

Dana next contends that the trial court erred when it "drew conclusion[s]" as to how Dana sustained her injuries "absent any evidence to support [its] conclusion."

Dana's argument mischaracterizes the trial court's remarks.  While issuing its oral ruling, the trial court explained why it could not find by a preponderance of the evidence that Patrick was the cause of Dana's injuries, as Dana claimed.  After summarizing the testimony indicating that Dana herself had no memory of the underlying incident and observing that Wahlgren "couldn't testify . . . as to the cause of the injury," the trial court stated, "So the evidence before the Court is [Dana] sustained some injury, but it is unclear whether that was from a slip-and-fall or whether that was from being physically escorted to the ground or removed from the property by law enforcement."  Dana asserts these remarks constituted unsupported findings by the trial court as to the cause of her injuries.

But viewed in context, it is clear the trial court was not making a finding as to the cause of Dana's injuries.  Instead, the trial court was pointing out that the evidence was insufficient to show that Patrick—as opposed to something or someone else—caused Dana's injuries.  Dana does not establish that the trial court "wrongly" stated that Dana's injuries resulted from a slip and fall or her interaction with law enforcement.

G.    Representation of Counsel

As a final matter, Dana claims that her trial counsel "failed in representation" with regard to counsel's performance at trial.  But Dana cites no authority for the

15

proposition that in a family law proceeding, an attorney's alleged "ineffective assistance" is a basis for reversal. Cf. Seventh Elect Church In Israel v. Rogers, 34 Wn. App. 105, 120, 660 P.2d 280 (1983) (constitutional right to effective assistance of counsel applies to criminal proceedings, and "[n]o similar right is given to parties in civil actions").

Dana also argues that reversal is required because she did not authorize her attorney to sign the permanent restraining order and because her attorney failed to "correct" the provisions of the findings and conclusions and the decree stating that a restraining order should be approved. These arguments fail because they are based on flawed premises. First, Dana's assertion that the findings and conclusions and decree required "correction" is based on her assertion that the trial court orally ruled that it would not consider the restraining order. But as discussed, Dana's assertion mischaracterizes the import of the trial court's remarks.

Second, Dana appears to believe that the trial court would not have entered the restraining order had her attorney not signed it. But the restraining order was an order of the court, entered based on its determination that the parties had stipulated to its entry. Although Dana's attorney's signature appears on the order, Dana does not persuade us that her attorney's signature was required or that the trial court would not have entered the order had Dana's attorney refused to sign.

III.     Motion for Reconsideration

In addition to arguing that the trial court erred in entering the permanent restraining order, Dana asserts that the trial court erred by denying her motion for reconsideration of that decision.  We disagree.

"Motions for reconsideration are addressed to the sound discretion of the trial court and a reviewing court will not reverse a trial court's ruling absent a showing of manifest abuse of discretion."  Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005).

Here, Dana does not address the standards for reconsideration,[3] much less establish that the trial court abused its discretion under those standards. Additionally, Dana's arguments regarding the trial court's denial of reconsideration repeat many of her arguments as to why the trial court erred by entering the

---

[3] Under CR 59, a motion for reconsideration may be granted for the following reasons:

(1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial;

(2) Misconduct of prevailing party or jury; and whenever any one or more of the jurors shall have been induced to assent to any general or special verdict or to a finding on any question or questions submitted to the jury by the court, other and different from the juror's own conclusions, and arrived at by a resort to the determination of chance or lot, such misconduct may be proved by the affidavits of one or more of the jurors;

(3) Accident or surprise which ordinary prudence could not have guarded against;

(4) Newly discovered evidence, material for the party making the application, which the party could not with reasonable diligence have discovered and produced at the trial;

(5) Damages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice;

(6) Error in the assessment of the amount of recovery whether too large or too small, when the action is upon a contract, or for the injury or detention of property;

(7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;

(8) Error in law occurring at the trial and objected to at the time by the party making the application; or

(9) That substantial justice has not been done.

17

restraining order in the first instance. Because these arguments do not establish the trial court erred by entering the restraining order for reasons already discussed, they also do not support a conclusion that the trial court abused its discretion by denying Dana's motion for reconsideration.

In support of her motion for reconsideration, Dana also submitted copies of email correspondence between Dana and her attorney, and between the parties' respective attorneys, related to the DVPO and the TRO. Dana contends that the correspondence shows the DVPO was improperly entered. But the propriety of the DVPO was not before the trial court. Furthermore, much of the correspondence on which Dana relies consists of statements made during the parties' unsuccessful efforts to reach a negotiated resolution regarding the DVPO and, later, continuing restraints. Dana does not establish that the trial court abused its discretion inasmuch as it declined to consider this new evidence. See Martini v. Post, 178 Wn. App. 153, 162, 313 P.3d 473 (2013) ("The decision to consider new or additional evidence presented with a motion for reconsideration is squarely within the trial court's discretion."); see also ER 408 (evidence of conduct or statements made in compromise negotiations not admissible to prove liability for or invalidity of a claim).

Dana also requested, on reconsideration, a DVPO protecting her from Patrick, alleging that Patrick was stalking her via social media and making false claims against her. Dana argues that the trial court erred by ignoring that request. But a motion for reconsideration of the restraining order protecting Patrick from Dana was not a proper avenue for requesting a DVPO protecting Dana from

Patrick, particularly where it does not appear Dana made any such request during trial.  Cf. Wilcox, 130 Wn. App. at 241 ("CR 59 does not permit a [party] to propose new theories of the case that could have been raised before entry of an adverse decision.").[4]

We affirm.

_____

WE CONCUR:

_____        _____
Colwr, J.                         Mann, J.

---

[4] Nothing in our opinion precludes Dana from seeking such an order by appropriate means.